UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

ELKA GOTFRYD

                        Plaintiff,                    **COMPLAINT**

vs.

CITY OF NEWBURGH, ALEXANDRA CHURCH,
JOSEPH DONAT,

                        Defendants.
----------------------------------------------------------------x

      By and through her counsel, Michael H. Sussman, Esq., plaintiff complains of defendants as follows:

I. **PARTIES and JURISDICTION**

1. Plaintiff Elka Gotfryd is a white female who resides within this judicial district.

2. Defendant, City of Newburgh [hereinafter "the City" or "Newburgh"], is a municipal corporation located within this judicial district and organized pursuant to the laws of the State of New York. It may sue and be sued.

3. Defendant Alexandra Church resides within the City and, at all relevant times, has served as its Director of Planning and Development.

4. Defendant Joseph Donat is the City Manager of the City and has so served at all times relevant to this Complaint.

5. The acts and omissions attributed herein to defendants Church and Donat were all committed under color of state law in her capacity as Director of Planning and Development and his capacity as City Manager.

6. As plaintiff alleges that defendants violated the First and Fourteenth Amendments to the United States Constitution by terminating plaintiff's employment for activities in which she engaged to promote the rights and interests of African Americans and to oppose municipal practices which devalue their rights and interests, this Honorable Court has jurisdiction over this matter pursuant to 42 U.S.C. section 1983.

II. **FACTUAL ALLEGATIONS**

7. In or around February 2020, plaintiff commenced provisional employment with defendant City as a City Planner responsible for developing, leading, and monitoring community and economic development projects.

8. Before taking maternity leave in early March 2020, and upon her return from maternity leave in May 2020, as the City's Director of Planning and Development, Ali Church acted as plaintiff's direct supervisor and defendant Donat as Church's supervisor.

9. Within a few weeks of beginning her employment, plaintiff developed a goal that the City's planning efforts, specifically with relation to an ongoing Housing Needs Assessment, should be "anti-racist" in nature and should strive to be beneficial to residents of color in the City and to combat systemic racism.

10. Plaintiff wrote this goal, including the word "anti-racist," into her project materials and submitted it to defendant Church.

2

11. Defendant Church told plaintiff to remove the term "anti-racist" from the project materials because she believed it would alienate the Latinx community.

12. While plaintiff did not believe this to be accurate, she removed the term "anti-racist," as Church directed.

13. Defendant Church otherwise praised plaintiff's work on the project and expressed her approval at plaintiff's work product.

14. On June 8, 2020, plaintiff sent an email with an agenda and an attached outline of target goals to the members of the Newburgh Housing Coalition, a group comprised of City employees and community residents and other organizational/governmental partners working to address housing-related challenges in the City.

15. On the same day, Plaintiff presented and discussed the outline with participants at the virtual Housing Coalition meeting.

16. In her list of target goals, plaintiff included the aim to "identify anti-racist and anti-displacement strategies for fair, accessible, and safe housing and economic development."

17. Later that day, defendant Church sent plaintiff an email indicating that she needed to approve all materials plaintiff created before their circulation.

18. This was the first time defendant Church issued such a directive though, before this, plaintiff had distributed numerous documents and materials to various groups with no issues.

3

19. Following her transmission of this email, defendant Church called plaintiff into a meeting and became hostile, falsely accusing plaintiff of not meeting deadlines and failing to use proper methodology in her projects.

20. No one in the Planning and Development Department had ever told plaintiff she was not meeting deadlines or provided any such feedback and defendant Church's accusations were factually baseless.

21. On or around July 10, 2020, plaintiff and another colleague from the department worked together to prepare for another meeting of the Newburgh Housing Coalition.

22. While discussing the upcoming meeting, defendant Church told plaintiff that she should not have used the term "anti-racist" in her memo of June 8 because the term would alienate the County of Orange, an important funding source for the City. This was the second time Church instructed plaintiff not to use the term "anti-racist".

23. A few days later, plaintiff sent defendant Church an email seeking to clarify her intentions regarding the use of the term "anti-racist".

24. Defendant Church responded by acknowledging the legacy of systemic racism in Newburgh and reiterating her fear of alienating the Latinx community and unnamed County officials by and through the use of such allegedly inappropriate language.

25. Defendant Church made no other comments about plaintiff's work with the Newburgh Housing Coalition.

26. In or around early August 2020, plaintiff and defendant Church attended an in-person meeting regarding the City's Code Sweeps program, an initiative developed to improve housing conditions in Newburgh neighborhoods overwhelmingly populated by African Americans and Hispanics.

27. During this meeting, plaintiff became concerned that the language being used in the meeting reinforced stereotypes of minority neighborhoods in the City and that members of the Codes Department, the only department of the City composed predominantly of minority employees, were not represented at the meeting despite the Code Sweeps program's association with the jurisdiction of that Department.

28. Plaintiff asked other meeting attendees why the Codes Department was not in attendance.

29. She was told that Chief Horton, a white male who served as the interim manager of the Codes Department and the City's Fire Chief, had been scheduled to attend.

30. Following the meeting, plaintiff emailed defendant Church and Erin Cousins, who the City had hired to work on a major grant dealing with code enforcement that included the Code Sweeps program, and expressed her concern that the kind of language used in the meeting was racially stereotypic, linked poor building conditions with high crime rates, and further perpetuated the over-policing and gentrification of minority neighborhoods.

31. Plaintiff further offered to work on more meaningful outreach, partnerships, and programs to combat issues of systemic racism in the City in a more meaningful way.

32. Defendant Church did not respond to plaintiff's offer, nor to plaintiff's concerns regarding the Code Sweeps program in general.

33. On or around August 25, 2020, defendant Church and plaintiff met to discuss plaintiff's performance evaluation.

34. During this meeting, Church asked plaintiff if plaintiff believed Church to be racist. Plaintiff calmly responded stating that she believed defendant Church, like herself and everyone else, had implicit biases that could be racist in nature and that they should all work to improve their understanding of members of minority groups.

35. In response to this comment, defendant Church began to cry and left the meeting.

36. Upon her return, she referred to plaintiff's comments as "career-destroying," and ended the meeting.

37. On September 3, 2020, plaintiff received her performance evaluation which noted various inaccurate reports of job performance deficiencies, including the false claim that plaintiff's tone was often "combative, or aggressive".

38. Believing this evaluation inaccurate and retaliatory for her opposing systemic and institutionalized racism in Newburgh, plaintiff submitted a grievance to City Manager Donat who was thereby placed on notice that plaintiff believed she was being targeted for her opposition to such racism.

39. At no point did defendant Donat or defendant Church respond to or resolve plaintiff's concerns of racism embedded in the Code Sweeps program, nor to Church's false reports of plaintiff's work performance.

40. In or around November 2020, plaintiff sought a grant directed at exploring and exposing the history of African American civil rights advocacy in the City of Newburgh.

41. Defendant Church told plaintiff that she should pursue community partnerships and contact Congressman Sean Maloney's office to elicit a letter of support for this grant proposal.

42. Plaintiff proceeded as she directed and contacted individuals she knew in the community and in Congressman Maloney's office to gain support for this grant proposal.

43. Throughout her employment and during her work on this project, plaintiff communicated with people of color from around the City and various leaders who were interested in improving housing conditions in minority-populated neighborhoods.

44. In so proceeding, plaintiff did not hide her associations and Church knew plaintiff was working these individuals on the project.

45. While reviewing plaintiff's materials on the grant, defendant Church read an email in which plaintiff noted the lack of representation of people of color on the Newburgh Architectural Review Commission [hereinafter "ARC"] and referred to it as an all-white entity.

46. Reading plaintiff's characterization of the ARC caused defendant Church to become angry and yell at plaintiff, accusing her of opening up the City to a discrimination lawsuit.

47. Plaintiff replied that she was just trying to advocate for the under-represented in Newburgh's minority communities.

48. Defendant Church stated that plaintiff had no legitimate, work-related interest in this issue and was failing at her job.

49. Following Church's accusations, plaintiff submitted another grievance to defendant Donat, as she believed defendant Church's behavior followed a pattern of retaliation in response to plaintiff's opposition to racism.

50. Once again, defendant Donat did not respond to or resolve plaintiff's concerns regarding defendant Church's racial bias or to Church's hostile and unfair treatment of plaintiff.

51. On or around March 1, 2021, plaintiff was called into a meeting with an investigator and interviewed about her contact with Elizabeth Zeldin, the Director of a grantmaking foundation with whom she had spoken about anti-displacement strategies that could be beneficial for Newburgh minority residents.

52. Plaintiff has previously disclosed this contact to defendant Church.

53. Plaintiff answered all questions posed to her and inquired why she was being interrogated.

54. The City's Corporation Counsel told plaintiff that the City had received a report stating that she had "done something she was instructed not to do."

55. Plaintiff received no further details as to what she had allegedly done beyond her job duties.

56. On March 9, 2021, defendant Donat terminated plaintiff.

57. During their meeting, defendant Donat provided plaintiff with no reason for this adverse action.

58. The termination letter plaintiff received from defendant Donat likewise cites no reason for plaintiff's termination.

59. At all times, plaintiff was qualified to perform the duties and responsibilities assigned to her and associated with her position.

60. Whenever plaintiff sought to elevate issues of institutional or systemic racism and get the City leadership to focus on implementing ways of more effectually addressing it, she received hostility and beratement from Church who suggested that these issues were outside the scope of her job and that raising such issues would either alienate a powerful constituency or other units of government.

61. By dint of her termination, plaintiff has suffered economic and non-economic losses.

62. Specifically, plaintiff has not been able to find comparable employment and has experienced mental stress and anguish as a result of the defendants' treatment of her.

63. It is likely that plaintiff shall continue to suffer pecuniary and non-pecuniary damages from the treatment complained of herein.

III. **CAUSES OF ACTION**

64. Plaintiff incorporates paras. 1-60 as if fully restated herein.

65. By terminating plaintiff because she opposed discriminatory language and behavior, advocated for minority communities, and positively associated with minority leaders, defendants intentionally violated plaintiff's right to equal protection of the law as guaranteed by the Fourteenth Amendment to the United States Constitution as made actionable by and through 42 U.S.C. section 1983.

66. By terminating plaintiff because she opposed discriminatory practices, something her supervisors deemed to be beyond her job functions and responsibilities, defendants violated the First Amendment to the United States Constitution as made actionable by and through 42 U.S.C. section 1983.

WHEREFORE, plaintiff prays that this Honorable Court [a] assume jurisdiction in this matter, [b] empanel a jury to hear and decide all issues within its jurisdiction; [c] award to plaintiff compensatory damages, including back and front pay and damages for emotional distress, pain and suffering and humiliation, as against defendants Donat and Church jointly and severally; [d] award to plaintiff punitive damages against defendants Donat and Church; [e] award reasonable attorneys' fees and costs pursuant to 42 U.S.C. section 1988 and; [f] enter any other order as the interests of justice and equity require.

Dated: May 3, 2021

Respectfully submitted,
Michael H. Sussman [3497]

SUSSMAN & ASSOCIATES
1 Railroad Ave, Suite 3
PO Box 1005
Goshen, NY 10924
(845) 294-3991 [phone]
(845) 294-1623 [fax]
sussman1@sussman.law
Attorney for Plaintiff